UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

| | |
|---|---|
| JUSTICE FAMILY FARMS LLC, a West Virginia Limited Liability Company, | )<br>)<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) CIVIL ACTION NO. 5:11-0426<br>) |
| GUESS IRRIGATION COMPANY LLC, a South Carolina Limited Liability Company,[1] | )<br>)<br>)<br>) |
| Defendant. | )<br>) |

## REPLY IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

Defendant, properly identified as Guess Farm Equipment Company, Inc. d/b/a Guess Irrigation Company ("Guess"), by counsel, respectfully submits this Reply in Support of its Motion to Dismiss, or in the Alternative, Motion to Transfer Venue, and states as follows:

## PRELIMINARY STATEMENT

Hauling Guess into West Virginia to defend against this meritless litigation violates the Due Process Clause and the venue statute. Guess is a South Carolina company, the Project at issue is located in South Carolina, the contract contemplated that all of the work be performed in South Carolina, in fact all of the work was performed in South Carolina, and any breach that is alleged to have occurred arose, if at all, in South Carolina. There is simply no basis for personal jurisdiction here. Plaintiff's feeble attempt to bootstrap isolated phone calls on top of one

---

[1] The Defendant is incorrectly identified in the Complaint as Guess Irrigation Company, LLC. The proper corporate entity is Guess Farm Equipment Company, Inc., d/b/a Guess Irrigation Company.

1

inconsequential meeting, at which no substantive business was resolved, is a desperate effort to manufacture personal jurisdiction where none exists. Such conduct offends traditional notions of fair play and substantial justice, and accordingly, the Court should dismiss this case for lack of personal jurisdiction.

In the event that the Court wishes not to dismiss the lawsuit in its entirety, the case clearly should be transferred to the United States District Court for the District of South Carolina. All of the relevant factors favor the resolution of this claim in that jurisdiction, as explained in detail in the original moving papers. The bottom line is that the Plaintiff seeks to have the convenience of one person trump not only the Due Process Clause of the U.S. Constitution, but the convenience of every other party and witness to this case as well. The Plaintiff likewise seeks to impose on this Court and jurors of this State the need to interpret questions of South Carolina law and decide questions of fact that arose in a distant jurisdiction, not West Virginia. Plaintiff disregards the obvious fact that its remedy lies in South Carolina, where there is another federal court available that is much more suited to handle these tasks, that has compulsory power over witnesses — including the third-party South Carolina Department of Health and Environmental Control officials involved with issuing permits the Plaintiff applied for — and whose jurors have a much keener interest in the resolution of this proceeding. For all of these reasons, this case should not proceed in West Virginia.

## ARGUMENT

I. **PLAINTIFF CANNOT ESTABLISH A PRIMA FACIE SHOWING OF PERSONAL JURISDICTION IN ACCORDANCE WITH FEDERAL DUE PROCESS.**

A. **Minimum Contacts**

In its Response, JFF identifies and relies on the following "contacts" to justify this

2

Court's *in personam* jurisdiction over Guess: (i) the mere fact that Guess entered into a contract with a West Virginia company, (ii) a one-time, one-hour meeting in West Virginia during which no agreement was reached, (iii) generic "phone calls and other communications," and (iv) the false allegation that Guess "directed the contract to JFF in West Virginia for its execution." (See Pl.'s Resp. at 6.) As discussed below and based on the facts of record, none of these alleged contacts are of the requisite "quality and nature" to confer personal jurisdiction in accordance with federal due process.

JFF concedes that Guess, a South Carolina company without West Virginia employees or property, does not have the "continuous and systematic" contacts necessary to confer general jurisdiction in this forum. Instead, JFF argues that Guess' alleged actions with respect to the contacts identified above are sufficient to establish specific jurisdiction. To do so, JFF bears the burden to show "purposefully directed" contacts, initiated by Guess, that are sufficient to create a "substantial connection" with West Virginia. ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 625 (4th Cir. 1997). This JFF has failed to do. Among other deficiencies, JFF's logic faces two obvious obstacles: the contract sued upon was not performed, in whole or in part, in West Virginia, and the sporadic and isolated contacts that JFF relies upon to confer jurisdiction were not directed *by* Guess. These are the determinative facts that distinguish this case from all of the cases cited and relied upon by JFF.

In defining the "minimum contacts" needed to establish personal jurisdiction, the United States Supreme Court has required that the defendant "purposefully avail[] itself of the privilege of conducting activities within the forum State." Hanson, 357 U.S. at 253. "In other words, the actions *initiated by the defendant* must be "purposefully directed" at the forum state, creating a 'substantial connection' with that state." Autoscribe Corp. v. Goldman, 47 F.3d 1164, 1995 WL

3

56662 *4 (4th Cir. 1995) (unpublished opinion) (citing Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475-76 (1985)) (emphasis in original). Thus, the "quality and nature" of the activity is essential to minimum contacts analysis, which "embodies the basic notion that *the defendant's own actions* must be such as to put it on notice of the possibility of defending itself in the forum state." Id. (emphasis added); Burger King, 471 U.S. at 475 ("actions by the defendant *himself*" are necessary to "create a 'substantial connection' with the forum State") (emphasis in original); Federal Ins., 886 F.2d at 658 (holding that sales by defendant in foreign state were "initiated by" others and thus did not constitute purposeful availment of "privilege of conducting business" in forum state). Accordingly, the sole inquiry presented here is whether the contacts identified by JFF are sufficient to justify the exercise of specific personal jurisdiction in this case. Each of the contacts is considered in turn.

1. Contacts related to the Contract.

The first type of contact JFF relies upon involves the execution of the contract. JFF attaches inordinate significance to the mere fact that Guess "contracted with a West Virginia company." (See Pl.'s Resp. at 6.) The United States Supreme Court has expressly considered and rejected such an argument, explaining that "[i]f the question is whether an individual's contract with an out-of-state party alone can automatically establish sufficient minimum contacts in the other party's home forum, we believe the answer is that it cannot." Burger King Corp., 471 U.S. at 478. Fourth Circuit decisions are in accord. E.g., Diamond Healthcare of Ohio, Inc. v. Humility of Mary Health Partners, 229 F.3d 448, 451-52 (4th Cir. 2000) (refusing to extend personal jurisdiction in Virginia over foreign defendant, even though defendant contracted with Virginia corporation); Ellicott Mach. Corp. v. John Holland Party Ltd., 995 F.2d 474, 478-79 (4th Cir. 1993) (finding contacts with Maryland "insubstantial," despite the fact that the contract

4

made in Maryland); CEM Corp. v. Pers. Chemistry, AB, 2003 WL 122510 (4th Cir. Jan. 15, 2003) (unpublished opinion) (holding that parties' agreement-in-principle did not, by itself, subject defendant to specific jurisdiction in the forum). The holding of these authorities is not surprising since minimum contacts analysis focuses on the purposeful activities directed by the out-of-state party, and hence, where the in-state party signed its contract is not germane to the analysis. Id. Accordingly, the fact that the Guess contracted with a West Virginia company does not confer personal jurisdiction in this case.

JFF also asserts that Guess "directed the contract to Justice in West Virginia for its execution," and contends that this contact confers personal jurisdiction. (Pl's Resp. at 1, 6.) This assertion, however, is directly contrary to the affidavits on record. In his affidavit, R. Tyler Fields, agricultural engineer for Guess, stated that "[t]he contract on the Catfish Bay Farm project was ultimately signed in February 2011. I signed the contract for Guess Farm Equipment Company, Inc. while I was sitting in Tom Floyd's office at Black River Farm in Gable, South Carolina. After I signed the contract, I handed it to Tom Floyd." See Fields Aff. ¶¶ 17-18. Mr. Fields further affirmed that "[a] few days after I signed the Catfish Bay Farm contract in South Carolina, I received a copy of the contract signed by Mr. Justice." Id. ¶ 19. In other words, the contract was signed and delivered to JFF in South Carolina, and was at that moment, out of Guess' hands. Guess intended to deliver the contract to JFF in South Carolina, and its "purposeful" activity ended right there in Mr. Floyd's office in Gable, South Carolina. Id. ¶ 17. What exactly JFF's employees in South Carolina did with it after that, and where they ultimately directed it, provides no legitimate basis for West Virginia jurisdiction over Guess. E.g., Burger King, 471 U.S. at 475 ("actions by the defendant *himself*" are necessary to "create a 'substantial connection' with the forum State") (emphasis in original). Simply put, Guess made no "contact"

whatsoever with West Virginia, and certainly not the "substantial connection" that is required with the forum State to confer jurisdiction.

Indeed, whether or not the contract ultimately ended up in West Virginia is a mere fortuity. Had Mr. Justice been away from West Virginia on travel or vacation on that day, presumably his employees would have directed the contract to him in whichever state — or even country — he was presently located in. He also could have signed the contract while traveling by airplane. This is precisely the type of "contact" that lacks the requisite "quality and nature" to confer personal jurisdiction over a foreign company. This Court should thus disregard the asserted "contact," or at the very least, conduct an evidentiary hearing so that credibility of JFF's assertion may be tested. Accordingly, neither of the identified contacts related to the contract suffice, independently or collectively, for specific personal jurisdiction.

2. The November 19, 2011 meeting in West Virginia.

The second contact JFF identifies is the one-time, one-hour meeting in West Virginia between JFF and Guess on January 19, 2011. As discussed below, JFF's reliance on this contact is severely misplaced. E.g., CEM Corp, 2003 WL 122510 (holding that "[o]ne visit to the state, accompanied by a few telephone calls and faxes to settle litigation . . . would not put [the defendant] on notice that it 'should reasonably anticipate being hailed into court' in [the forum]"); Hydrokinetics, Inc., 700 F.2d at 1029 (holding that defendant that negotiated contract by telex, telephone and letter with plaintiff in forum state, then purchased goods in forum state, and twice travelled to forum state to resolve contract dispute did not purposefully avail itself of the laws of the forum state). It is clear that the mere act, by one of its agents, of stepping foot in West Virginia (even if it is to meet with the in-state plaintiff) does not satisfy the due process requirements that Guess purposefully availed itself of the privilege of conducting activities in

6

West Virginia, or invoked the benefits and protections of West Virginia law. The real issue, then, is whether the facts on record in this case elevate this "contact" to the "quality and nature" of a contact that is sufficient to confer personal jurisdiction. The clear answer here is they do not: there is nothing inherently special about this one-hour meeting that makes it substantially different from the in-state meeting "contacts" considered and rejected by other federal courts.

Contrary to Plaintiff's representation that "[t]here do not appear to be any factual disputes pertinent to this motion," any fair reading of the pleadings and affidavits presented shows that Plaintiff and Guess have presented two dramatically different versions of not just the significance of this meeting, but more importantly, the factual events leading up to and during the meeting. (Pl's Resp. at 2.) Apparently, the only consensus between the parties is that on January 19, 2011, a meeting attended by Mr. Fields, Mr. Justice, and Mr. Ball occurred in Beaver, West Virginia, concluded within one hour, and that the agreement was not reached at the meeting or for several months following the meeting. It is also agreed that, apart from this sole exception, every other meeting between the parties occurred in South Carolina. The undisputed facts, however, end there.

For the sake of clarity, there are three important factual differences that are material to determining whether the January 19, 2011 meeting is a contact of the "quality and nature" that is necessary to confer personal jurisdiction. The first factual dispute is whether the meeting was somehow instrumental for Guess to solicit business from JFF. In its Response, Plaintiff characterizes the January 19, 2011 meeting as the "most significant" contact and regards the meeting as the "key" effort by Guess to "solicit" JFF's business and "further its prospects with Justice in hopes of establishing a business relationship with a West Virginia company." Id. At 6-7. These wildly exaggerated characterizations of the meeting are grossly distorted, misleading,

7

and have no basis in the factual record. Apart from counsel's rhetoric, JFF does not present any evidence to support those claims. In fact, Mr. Justice's own affidavit contains no assertion that the meeting was used by Guess to solicit JFF's business. (See generally Justice Aff.)

The reality, of course, is that it was not. As set forth in Mr. Field's affidavit, months before the November meeting, "[i]n August 2010, Bill Winbourne, who identified himself as an employee of Justice Family Farms, contacted William Taber of Guess Farm Equipment Company, Inc. at [Guess'] office in South Carolina. Mr. Winbourne was interested in installing irrigation systems on several farms he said his employer owned in South Carolina." Fields Aff. ¶ 3. In other words, JFF — through its employees working in South Carolina — contacted Guess to solicit its services in this case. Direct contact and communication ensued between Guess and JFF's South Carolina offices. Shortly after JFF's initial solicitation, three face-to-face meetings were scheduled between the parties, all of which occurred in South Carolina Id. ¶¶ 6-8, 11. Accordingly, Plaintiff's argument this one-hour meeting is proof that Guess "purposefully directed" its activities toward West Virginia is contrary to the evidence and is unpersuasive.

The second dispute concerns the significance of the meeting's location. In its Response, Plaintiff points to the fact that the November 19, 2011 meeting occurred in West Virginia, and then, jumps to the conclusion that Guess thereby "purposefully availed itself of the privilege of doing business in West Virginia." (Pl's Resp. at 7.) The problem for Plaintiff, however, is that its logic is not supported by the record. The fact is that Beaver, West Virginia, was only "one of several potential meeting locations that were discussed, including South Carolina and Florida." (Field's Aff. ¶ 12.) Importantly, Guess did not request to come to West Virginia, nor did it decide that the meeting would occur there. Instead, on January 18, 2011, Mr. Fields was contacted by JFF's office and asked if he would drive to Beaver, West Virginia, to meet with Mr.

8

Justice. Id. ¶ 12. Mr. Fields accepted JFF's offer and agreed to travel to West Virginia. Id. Mr. Justice's affidavit does not dispute these facts. Fairly considered on the basis of these facts, this "contact" was not "purposefully directed" by Guess, and therefore, cannot form the basis for specific personal jurisdiction. E.g., Hunt v. Erie Ins. Group, 728 F.2d 1244, 1248 (9th Cir. 1984) ("requisite minimum contacts are not established when the plaintiff's action 'requires the defendant to send communications into th[e] forum").

The third factual dispute concerns the substantive nature of the meeting. The record shows that the contract was not in fact signed during the meeting. (Fields Aff. ¶ 17; Justice Aff. ¶ 5, 7-8.) Both parties agree that negotiations continued in the months after the meeting and that it was those subsequent negotiations that "ultimately resulted in a contract between Justice Family Farms and Guess." (Justice Aff. ¶ 8.) The parties' versions diverge, however, on the substantive nature of the discussions during the meeting. On behalf of Guess, Mr. Fields states in his affidavit that during the one-hour January 19, 2011 meeting, the parties "discussed the Catfish Bay Farm proposal but nothing was finalized. No agreements were reached on several key items, including financial terms." Fields Aff. ¶ 15. For its part, Plaintiff contends in its Response, that the meeting was so substantial that, in essence, it was the key negotiation session between the parties. Mr. Justice states in his affidavit that:

> Even though an agreement was not reached on that day, during the meeting we did reach an agreement as to pricing, and we discussed several key terms of the proposed project and contract with Guess, including pricing, timing, and assurances by Guess that it would supervise and coordinate all aspects of the construction. Timing was a significant term of the contract for us. During the meeting, I made it very clear to Guess that Guess had to meet an April 1, 2011 deadline or otherwise the system was of no use to us.

(Justice Aff. ¶ 5.)

An examination of the parties Agreement itself is warranted. [See Contract at Docket No. 10-2.] Notwithstanding Mr. Justice's statements to the contrary, it appears that the majority of the "key terms" identified by Mr. Justice, if they were discussed, were ultimately not incorporated in the parties' final contract, and thus, amount to parol evidence at best. Id. Nothing about the contract itself is ambiguous. The contract, dated February 8, 2011, was executed by Guess on February 9, 2011, and by JFF on February 10, 2011. Id. Standard pricing "sales terms" are included: 10% due with signed contract; 80% due when equipment is delivered, and the remaining 10% due upon completion. Id. The contract does not contain any contractual obligation "by Guess that it would supervise and coordinate all aspects of the construction." Id. In direct contrast to Mr. Justice's statement that the parties agreed that April 1, 2011 would be a firm deadline, the Agreement itself lacks an April 1, 2011 deadline, lacks any "time is of the essence" provision, and instead, provides the following term with respect to timing:

> **Target**, not guaranteed, completion date is April 15, 2011. Weather, field conditions, products and services provided by the customer, and conditions beyond control could affect the completion date.

Id. at 2 (emphasis in original). Elsewhere, the contract states that "Site work also subject to weather conditions and field conditions." Id. at 1. Accordingly, based on the admissible evidence of record, there is nothing about the one-hour meeting on January 19, 2011, that is sufficient to confer personal jurisdiction.

### 3. Phone calls and other communications.

The third and final group of contacts relied on by JFF are unidentified, generic "phone calls and other communications." Plaintiff does not supply a specific factual basis for these alleged contacts, other than to say that Mr. Justice sent email and made telephone calls to Guess, while he was in his Beaver, West Virginia office, and on one occasion, participated in a

conference call. (Justice Aff. ¶¶ 6-7.) Again, these indefinite contacts provide no basis for a finding of personal jurisdiction if they were not initiated by Guess.

As the Fourth Circuit has observed, the plaintiff "by its agents' telephone calls, cannot lure the defendants into contacts with the forum state for the purpose of establishing jurisdiction over them." Autoscribe Corp., 47 F.3d 1164; Bashaw v. Belz Hotel Management Co., 872 F. Supp. 323, 327 (S.D. W. Va. 1995) ("Answering . . . a [telephone] call cannot be characterized as activity purposefully directed toward West Virginia, nor can it be characterized as an activity giving the Defendants fair warning of the possibility of suit in West Virginia. The 'unilateral' activity of another party or third person cannot satisfy the minimum contacts requirement of due process.") (quoting Fed. Ins. Co. v. Lake Shore, Inc., 886 F.2d 654, 659 (4th Cir. 1989)).

Here, there is no evidence that Guess initiated these phone calls. The evidence instead is that JFF initiated these phone calls and is now attempting to use them as a lure to establish jurisdiction. This Court should reject that effort. E.g., Diamond Healthcare of Ohio, Inc., 229 F.3d at 451-52 (refusing to extend personal jurisdiction in Virginia over foreign defendant, even though defendant entered into contract with Virginia corporation after telephone calls, letters, and faxes to Virginia were made, because "bulk of services" were not performed in Virginia); Ellicott Mach. Corp., 995 F.2d at 478-79 (finding contacts with Maryland "insubstantial," although contract was made in Maryland, after purposeful initiation by the foreign defendant and several weeks of negotiations involving letters, faxes, and telephone calls to Maryland).

Even if certain communications were initiated by Guess, the value of such contacts is somewhat limited. Federal courts have held that a nonresident defendant's facsimile and telephone communications or negotiations with an in-state plaintiff are insufficient to subject the nonresident defendant to personal jurisdiction. E.g., Federated Rural Elec. Inc. v. Inland Power

11

& Light Co., 18 F.3d 389 (7th Cir. 1994) (holding that "making telephone calls and mailing payments into the forum state are insufficient bases for jurisdiction."); Hydrokinetics, Inc., 700 F.2d 1026 (same); Scullin Steel v. Nat'l Ry. Utilization Corp., 676 F.2d 309, 314 (8th Cir. 1982) (finding that use of the telephone and mail are secondary factors insufficient alone to establish minimum contacts with forum state). Thus, the secondary "quality and nature" of telephone or mail communications generally militates against a finding that those contacts form a sufficient foundation for personal jurisdiction. Id.

4. Even Considered Cumulatively, Plaintiff's Identified Contacts Do Not Confer Specific Personal Jurisdiction.

Whether considered individually or collectively, Guess' contacts with West Virginia simply do not constitute the requisite purposeful activity establishing minimum contacts with West Virginia sufficient for the invocation of personal jurisdiction under federal due process. As set forth at length above, there are a wealth of cases that have considered all of these factors in totality and rejected them as a basis for personal jurisdiction, particularly where, as here, the contract was not performed in whole or in part within the forum.

5. The cases upon which JFF relies to support its claim to the contrary are inapposite.

Plaintiff cites various cases that it claims support a finding of personal jurisdiction here, but all of these cases are easily distinguished. In its Response, Plaintiff principally relies on the decision in Eastern Mktg. Corp. v. Texas Meridian Prod. Co., 798 F. Supp. 363 (S. D. W. Va. 1992). (See Pl's Resp. at 8-9, 12-14.) In Eastern Marketing, unlike here, the court found that "at least a portion of the parties' contract was performed in West Virginia, since the Defendants were contractually obligated to deliver natural gas to the Plaintiff's West Virginia location."

Eastern Marketing, 798 F. Supp. at 365. The key fact was thus that performance was to occur, in part, *in West Virginia*. Because of those specific facts — which are not present here — the court concluded that "[t]herefore, West Virginia's long arm statute should apply and personal jurisdiction attaches." Id.

The key distinguishing characteristic of every one of plaintiff's cases is that at least partial performance occurred in the jurisdiction in which the suit was brought. See, e.g., Prestige Magazine Co. v. Panaprint, Inc., 2009 WL 2029791 (S.D. W. Va. July 8, 2009) (unpublished opinion) (contract was partially performed in West Virginia — when defendant shipped printed products into West Virginia — and plaintiff brought suit in West Virginia); Williams Elec. Co. v. Honeywell, Inc., 854 F.2d 389, 392-93 (11th Cir. 1988) (tort occurred in Florida and suit was filed in Florida); Round One Prods., Inc. v. Greg Page Enters., Inc., 566 F. Supp. 934 (E.D.N.Y. 1982) ("meetings took place [in New York] which contemplated continuing New York activities of the parties" and suit was filed in New York); Genesis Research Inst., Inc. v. Roxbury Press, Inc., 542 S.E.2d 637, 639 (Ga. App. 2000) ("In this case, in-state negotiations occurred [in Georgia] and the list was ordered, so the consequences of the contract came into fruition" in Georgia, and the suit was brought in Georgia). That factual predicate is not present here. In this case, neither the Plaintiff nor the Defendant contend that any work was performed in West Virginia, because it simply did not occur. Accordingly, Plaintiff's cases are inapposite and do not provide the support it seeks.

### B. Traditional Notions of "Fair Play and Substantial Justice"

For the reasons set forth above and in Guess' Motion to Dismiss, Plaintiff fails step one of the federal due process requirements. Since Guess Farm Equipment has no purposeful contacts with West Virginia, it is unnecessary to consider certain other factors that may be

relevant to "traditional notions of fair play and substantial justice," such as the burden on the defendant, the plaintiff's interest in obtaining relief, the interests of the forum state, and the efficient resolution of controversies as between states. See Chung v. NANA Dev. Corp., 783 F.2d 1124, 1129-30 (4th Cir.), *cert. den.*, 479 U.S. 948 (1986); see also Lesnick, supra, 35 F.3d at 945-46. A strong showing on these factors may make the exercise of personal jurisdiction reasonable in a close case, but it "cannot . . . make up for a nearly complete lack of purposeful contact" with the forum state. Jeffers, supra, 152 F. Supp. 2d at 923-24.

In any event, traditional notions of fair play and substantial justice weigh decidedly against the exercise of personal jurisdiction in West Virginia in this case. Notwithstanding Plaintiff's vigorous arguments to the contrary, the "burden on the defendant" is an important factor for consideration. Id. Litigating and conducting a trial on the merits in the distant forum of West Virginia would be a substantial burden on Guess, which conducts all of its business in South Carolina. Individuals who are likely to testify, including Guess employees who worked on the Project and any other third-party witnesses, including state officials, reside in South Carolina. (See David G. Hane Aff. ¶¶ 3, 5-13.). Given the location of the property and the work, exclusively performed in South Carolina, any meaningful examination, by expert or lay witnesses, of the property itself and the work done would have to be conducted in South Carolina. Remarkably, Plaintiff ignores the fact that litigating in this forum will also burden its own South Carolina employees, who were the primary actors on behalf of JFF throughout this Project. The additional — and unnecessary — burden on all of these individuals carries substantial weight that should not be dismissed as casually as Plaintiff suggests. To do so would be directly contrary to the federal due process requirements and traditional notions of fair play and substantial justice.

A second important factor is the litigating in this district is in no way necessary for JFF to obtain relief, which can and should be brought in the District of South Carolina. Comparison of the relative state's interests demonstrates this. West Virginia does not have a significant interest in the enforcement of a contract negotiated and performed in South Carolina, and governed by South Carolina law, regardless of the residence of one of the contracting parties. This is especially so because the alleged breach of contract concerns Guess' *performance*, which occurred exclusively in South Carolina and thus relates solely to activities outside West Virginia. By comparison, South Carolina has a keen interest in adjudicating a dispute that involves performance to real property within its borders, by two companies that are transacting business and employing individuals in the State. The potential impact on the State's environmental regulation or policy is also relevant. On balance, South Carolina's interests trump West Virginia's in this case.

Furthermore, the efficient resolution of controversies between states also favors South Carolina. It is not efficient to litigate in West Virginia when virtually every employee and witness resides in South Carolina, the Project site is located in South Carolina, and the present dispute has nothing to do with activities in West Virginia. Importantly, the third-party witnesses, including the South Carolina Department of Health and Environmental Control officials, are located in South Carolina. For all the foregoing reasons, it would be inconsistent with due process for this Court to exercise personal jurisdiction over Guess in this matter. The Complaint should therefore be dismissed.

## II.   VENUE IN THIS DISTRICT IS IMPROPER.

As stated in Guess' original motion, this action should be dismissed for improper venue. While Plaintiff is grasping for some basis for venue, it is clear that none exists. In its Complaint,

Plaintiff contends that the appropriate basis for venue is that a "substantial part" of the events or omissions giving rise to the claim occurred in West Virginia. (Compl. ¶ 5.) As discussed at length above, absolutely no performance, in whole or in part, occurred in West Virginia, and the breach in performance, if it occurred at all, occurred in South Carolina. Because all of the "events or omissions giving rise to the claim" occurred exclusively in South Carolina, by definition, a "substantial part" did not occur here.[2]

Perhaps realizing the error of its argument, Plaintiff switched gears in its Response brief and now argues that the basis for venue is that "Guess [wa]s subject to personal jurisdiction in this district" at the time the action was commenced. (Pl's Resp. at 13.) For all the reasons set forth above, personal jurisdiction over Guess is lacking and has been lacking since the time this action was commenced. Because 28 U.S.C. § 1391 does not confer venue on the facts presented here, this action should be dismissed for improper venue.

### III. ALTERNATIVELY, THE COURT SHOULD TRANSFER VENUE, PURSUANT TO 28. U.S.C. § 1404(a), TO THE DISTRICT OF SOUTH CAROLINA.

As an alternative to dismissal, Guess respectfully requests that this case be transferred to the United States District Court for the District of South Carolina. The public and private interest factors applicable to such a discretionary transfer of venue were set forth and discussed in Guess' original motion, and need not be restated herein.

---

[2] Pursuant to 28 U.S.C. § 1391, a civil action wherein jurisdiction is founded solely on diversity of citizenship may be brought in any judicial district where the defendant resides, or where a "substantial part" of the events or omissions giving rise to the claim occurred. Venue is thus improper if (i) the defendant does not reside in the district where the suit is brought, (ii) a substantial part of the claim did not occur in the district where the suit is brought, or (iii) the plaintiff's choice of venue does not comply with a valid forum-selection clause. 28 U.S.C. § 1391(a)(1)-(3). For venue purposes, a corporate defendant resides "in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." Id. § 1391(c).

Plaintiff responded with two arguments: (i) a transfer would "merely shift the inconvenience from the defendant to the plaintiff," and (ii) "critical sources of proof" located in South Carolina are either unnecessary or, if essential, only five hours away. (Pl's Resp.14-15.) Plaintiff's first argument, that a transfer would merely shift the burden, is severely undercut by all of the evidence of record that the *only* individuals located in West Virginia, who are related to this litigation, are Mr. Justice and Mr. Ball. Every other individual, including JFF's employees, are in South Carolina. Presumably, in their capacities as officers of JFF, Mr. Justice and General Counsel, Mr. Ball, travel to the South Carolina offices routinely to oversee the operations. In any event, the convenience of one or two individuals cannot fairly be said to trump that of literally everyone else.

Second, apart from the three-page contract, all of the sources of proof in this case relate to the physical Project site, which is located in South Carolina. Although it is difficult to predict the future, the realistic possibility that a jury view would be necessary is a factor that supports transfer of venue in this case. Certainly, before trial, expert and lay witnesses will need to examine the property and Project. Finally, while a five-hour drive may not amount to much by Plaintiff's estimation (Pl's Resp. 15), forcing *all* the other individuals and witnesses to travel to West Virginia, and perhaps attend trial in a distant forum away from their jobs, families, and homes, is a significant enough sacrifice to warrant this Court's careful consideration.

## CONCLUSION

For all of these reasons, Guess Farm Equipment respectfully requests that the Complaint against it be dismissed in its entirety, or in the alternative, that the matter be transferred to the District of South Carolina.

Respectfully submitted,

**GUESS FARM EQUIPMENT COMPANY, INC.
D/B/A GUESS IRRIGATION COMPANY**

By Counsel

/s/ David Allen Barnette
David Allen Barnette (WVSB # 242)
Vivian H. Basdekis (WVSB #10587)
Attorneys for the Defendant
JACKSON KELLY PLLC
1600 Laidley Tower
Charleston, WV 25322
Tel: (304) 340-1000
Fax: (304) 340-1272
dbarnette@jacksonkelly.com
vhbasdekis@jacksonkelly.com

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
At Beckley

| | |
|---|---|
| JUSTICE FAMILY FARMS LLC, a West Virginia Limited Liability Company, <br><br> Plaintiff, <br><br> v. <br><br> GUESS IRRIGATION COMPANY LLC, a South Carolina Limited Liability Company, <br><br> Defendant. | CIVIL ACTION NO. 5:11-0426 |

## CERTIFICATE OF SERVICE

I, David Allen Barnette, counsel for Defendant, hereby certify that a true and accurate copy of the foregoing *Reply in Support of Defendant's Motion to Dismiss, Or in the Alternative, Motion to Transfer Venue* was electronically filed with the Clerk of the Court on the 19th day of August, 2011, using the CM/ECF system, which will send notification of such filing to the following participants:

>Jared Tulley, Esquire
>E-mail: jtully@pffwv.com
>Frost Brown Todd LLC
>Laidley Tower, Suite 401
>500 Lee Street East
>Charleston, WV 25301-3207
>*Counsel for Plaintiff*

>/s/David Allen Barnette
>David Allen Barnette (WV Bar No. 242)