IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

BECKLEY DIVISION

JUSTICE FAMILY FARMS LLC,

          Plaintiff,

v.                                        CIVIL ACTION NO. 5:11-cv-00426

GUESS IRRIGATION COMPANY LLC,

          Defendant.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed *Defendant's Motion to Dismiss, or in the alternative, Motion to Transfer Venue* (Document 5). After careful consideration of the supporting memoranda and all written submissions relative thereto, the Court grants Defendant's motion to dismiss.

**I.**

**FACTS AND PROCEDURAL HISTORY**

Plaintiff, Justice Family Farms LLC ("JFF"), is a West Virginia Limited Liability Company, with its principal office in Beckley, West Virginia. (Compl.¶ 1.) JFF's sole member is a citizen of the state of West Virginia. *Id.* Defendant, Guess Farm Equipment Company, Inc., d/b/a Guess Irrigations Company ("Guess"), is a Corporation organized under the laws of South Carolina with its principal place of business in St. Matthews, South Carolina. (Document 6 at 3.)

James C. Justice, III, is the Executive Vice President of JFF. (Justice Aff., ¶ 2.) JFF owns and operates the Catfish Bay Farm, located in Dillon and Marlboro Counties, South Carolina. (Compl. ¶6.) In August 2010, Bill Winbourne, an employee of JFF, contacted William Taber, an

employee of Guess, about installing irrigation systems on several of JFF's farms in South Carolina. (Fields Aff. ¶ 3.) One of the projects discussed was the irrigation system that is the subject to this litigation. *Id*. at ¶4. That same month, Guess's agricultural engineer, R. Tyler Fields, Mr. Winbourne and Mr. Taber met in Summerton, South Carolina, to discuss the Catfish Bay Farm project. *Id*. at ¶ 6. In September 2010, Mr. Fields submitted Defendant's proposal to install an irrigation system at the Catfish Bay Farm to Tom Floyd, JFF's farm manager. Later, Mr. Taber, Mr. Fields and Mr. Floyd met about the proposal at Mr. Floyd's office in Gable, South Carolina. Id. *Id*. at ¶ 7. In November 2010, Guess resubmitted its proposal to JFF at Floyd's office in Gable, South Carolina. *Id*. at ¶ 8.

The parties negotiated face-to-face, via email and via phone. It is not clear from the record which party initiated the phone call and email negotiations. All face-to-face negotiations, with one exception, took place outside of this jurisdiction. (Justice, Aff., ¶¶ 3,4.) On January 18, 2011, Steve Ball, General Counsel for JFF, and Mr. Justice met for one hour to discuss the Catfish Bay Farm project with Mr. Fields in Beaver, West Virginia.[1] *Id*. Plaintiff and Defendant dispute the importance of this meeting. Plaintiff argues this meeting was key to the formation of this contract because several important terms were discussed including pricing, timing and oversight. (Document 10 at 1-3.) Plaintiff also contends the completion date was negotiated at the West Virginia meeting. Mr. Justice claims he "made it very clear to Guess that Guess had to meet an April 1, 2011 deadline or otherwise the system was of no use to [them]." (Justice Aff. ¶ 5.) However, the final contract included the term "**[t]arget**, not guaranteed, completion date is April 15, 2011." (Document 10-2.)

---

[1] Plaintiff's Complaint mistakenly alleges this meeting took place on or about February 10, 2011. (Compl. ¶ 6.) However, Mr. Justice's affidavit indicates that the meeting took place in January 2011. (Justice Aff.¶ 3.) Mr. Fields' affidavit indicates the meeting took place on January 19, 2011. (Fields Aff. ¶ 12.)

On or about February 10, 2011, Plaintiff and Defendant entered into a contract whereby Defendant contracted to construct, in exchange for payment, the planned irrigation system at Plaintiff's Catfish Bay Farm, located in Dillon and Marlboro Counties, South Carolina. (Compl. ¶¶ 6,11.) It is undisputed that all of the contracted work was to be performed by Defendant at Plaintiff's Farm in South Carolina.

Plaintiff claims Defendant breached their contract by "failing to construct and install the irrigation system as promised, failing to coordinate and oversee construction of the irrigation system in a reasonable and non-negligent manner, failing to use its best efforts to construct the irrigation system, and failing to act in accordance with the duty of good faith imposed by the agreement." (Compl. ¶ 25.) Plaintiff alleges jurisdiction is proper under 28 U.S.C. § 1332(a) because its claim "involves citizens of different states, and the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs." (Id. at ¶ 3.) Plaintiff further alleges venue is proper in this District under 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to its claim occurred in this District. (Id. at ¶ 5.)

On July 18, 2011, Defendant filed this motion to dismiss or, in the alternative, motion to transfer venue. Defendant moves for dismissal on two grounds. First, Defendant argues this Court's exercise of personal jurisdiction over it would violate the West Virginia long-arm statute and the Due Process Clause of the Fourteenth Amendment. (Document 6 at 2.) Accordingly, Defendant argues Plaintiff's Complaint should be dismissed pursuant to Federal Rules of Civil Procedure 12(b)(2). *Id*. Second, Defendant argues the Complaint should be dismissed for improper venue under 12(b)(3) of the Federal Rules of Civil Procedure. (Document 6 at 2-3.) Finally, Defendant moves in the alternative for transfer of venue to the United States District Court for South Carolina under 28 U.S.C § 1404(a). (Document 6 at 3.)

## II.

## MOTION TO DISMISS

*A. Legal Standard*

"In order for a court to validly exercise personal jurisdiction over a non-resident defendant: (1) a statute must authorize service of process on the non-resident defendant, and (2) the service of process must comport with the Due Process Clause." *In re Celotex Corp.*, 124 F.3d 619, 627 (4th Cir. 1997). West Virginia's long arm statute authorizes personal jurisdiction to the full reach of due process. *Id.* Accordingly, it is "unnecessary . . . to go through the normal two-step formula for determining the existence of personal jurisdiction." *Id.* at 628*.* Thus, the only question before this Court is whether exercising personal jurisdiction over Defendant is consistent with the Due Process Clause. *Id.*

"To satisfy constitutional due process, the defendant must have sufficient minimum contacts with West Virginia so that requiring it to defend its interests here would not 'offend traditional notions of fair play and substantial justice.'" *Vass v. Volvo Trucks N. Am., Inc.*, 304 F. Supp. 2d 851, 854 (S.D. W. Va. 2004) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). This requires a two-step inquiry. First, a court must consider whether the "out-of-state person ha[s] engaged in some activity purposefully directed toward the forum state." *Lesnick v. Hollingsworth & Vose Co.* 35 F.3d 939, 945 (4th Cir. 1994). Second, "if that initial test is met, a court must still determine whether the exercise of such jurisdiction would offend traditional notions of fair play and substantial justice." *Id.*

"When personal jurisdiction is properly challenged under Rule 12(b)(2), the jurisdictional question is to be resolved by the judge, with the burden on the plaintiff ultimately to prove grounds for jurisdiction by a preponderance of the evidence." *Carefirst of Md., Inc. v. Carefirst*

*Pregnancy Crisis Ctrs., Inc*., 334 F.3d 390, 396 (4th Cir. 2003). "[W]hen, as here, a district court rules on a Rule 12(b)(2) motion without conducting an evidentiary hearing . . . but rather relies on the complaint and affidavits alone, the burden on the plaintiff is simply to make a prima facie showing of a sufficient jurisdictional basis in order to survive the jurisdictional challenge." *Celotex Corp*., 124 F.3d at 628 (quoting *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989)). "In considering a challenge on such a record, the court must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." *Id*. (quoting *Combs*, 886 F.2d at 676).

Jurisdiction over a defendant may be either general or specific. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8 & 9 (1984). Here, Plaintiff appears to concede that Defendant does not have "continuous and systematic" contacts to confer general jurisdiction. Thus, the Court applies a three part test to determine if specific jurisdiction is proper. The Court considers "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff's claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." *ALS Scan, Inc. V. Digital Service Consultants, Inc.*, 293 F.3d 707, 712-13 (4th Cir.2002) (quotations and citations omitted). Although the purposeful availment prong cannot be mechanically applied, courts have considered several non-exhaustive factors including:

> whether the defendant maintains offices or agents in the forum state; whether the defendant owns property in the forum state; whether the defendant made in-person contact with the resident of the forum in the forum state regarding the business relationship; whether the defendant reached into the forum state to solicit or initiate business; whether the defendant deliberately engaged in significant or long-term business activities in the forum state; whether the parties contractually agreed that the law of the forum state would govern disputes; the nature, quality

and extent of the parties' communications about the business being transacted; and whether the performance of contractual duties was to occur within the forum.

*Consulting Engineers, Inc. v. Geometric Limited*, 561 F.3d 273, 278 (4th Cir. 2009) (citations omitted). "If, and only if, we find that the plaintiff has satisfied this first prong of the test for specific jurisdiction need we move on to a consideration of prongs two and three." *Id.* Here, the Court need only address the first prong.

### B. Analysis

Plaintiff alleges four of Defendant's contacts were purposefully directed activities. First, Defendant breached a contract with a West Virginia company. (Document 10 at 4,6.) Second, Defendant visited West Virginia to further negotiations of that contract. (Id.) Third, Defendant took part in phone calls and emails with a West Virginia company. (Id.) Fourth, Defendant directed the contract to West Virginia to be executed by a West Virginia company. (Id.)

The Court finds that Plaintiff's first and fourth alleged contacts were not purposefully directed activities. It is well established that a defendant's contract with an out-of-state party, alone, cannot automatically establish sufficient minimum contacts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475-76 (1985). There is no dispute in this case that the Defendant entered into a contract with a West Virginia company. Moreover, Mr. Justice signed the contract in West Virginia as the representative of JFF after Mr. Fields, the Defendant's agricultural engineer, signed it in South Carolina. However, the Court, having given consideration to the *Consulting Engineer, Inc.*, factors and having viewed these alleged "contacts" separately and together through the lens required by *Celotex*, finds these facts insufficient to establish activity purposefully directed at this State such that further analysis of specific jurisdiction would be appropriate.

6

Plaintiff's primary argument is the second alleged contact, that Defendant purposefully directed activities toward this jurisdiction based on the January 19, 2011 meeting that took place in Beaver, West Virginia. Plaintiff argues this meeting was central to the later finalized contract. (Document 10 at 2.) Plaintiff alleges that "[d]uring the West Virginia meeting, Justice made it clear to Guess that Guess had to meet an April 1, 2011 deadline or there could be no deal." (Id.) However, the final contract included the term "**[t]arget**, not guaranteed, completion date is April 15, 2011." (Document 10-2.) Even assuming Mr. Justice's testimony on this issue to be admissible, the central terms he suggests were negotiated at the West Virginia meeting did not appear in the final contract. Lastly, and connected to the argument made about the January 19, 2011 meeting, the Plaintiff contends that emails and phone calls (Plaintiff's third alleged contact) between Defendant and Plaintiff constitute purposefully directed activity with West Virginia.

Plaintiff principally relies on the decisions in *Eastern Mktg. Corp. v. Tex. Meridian Prod. Co.*, 798 F. Supp. 363 (S.D. W. Va. 1992) and *Prestige Magazine Co., Inc. v. Panaprint, Inc.*, No. 3:09-0314, 2009 WL 2029791 (S.D. W. Va. July 8, 2009). In *Prestige*, Judge Chambers found that the defendant, a Georgia printing company, had purposefully availed itself of the privilege of doing business in West Virginia by sending a high ranking official to West Virginia to negotiate a contract with a West Virginia company and further availed itself through a series of communications (including, emails and phone calls, not unlike the instant case) with the West Virginia company. *Prestige*, 2009 WL 2029791, at *3. In *Eastern Marketing*, Judge Haden found "Defendants ha[d] 'purposefully' availed themselves of the privilege of doing business in West Virginia by creating continuing obligations between themselves and a resident West Virginia plaintiff." *Eastern Mktg*, 798 F.Supp. at 366. *Eastern Marketing* dealt with a contract obligating the non-resident defendant to deliver natural gas, in part, to the plaintiff in West

7

Virginia. Similarly, in *Prestige* the defendant's goods were ultimately directed to the plaintiff in West Virginia.

*Prestige* and *Eastern Marketing* are easily distinguishable from the instant case. Here, no services or goods were ever purposefully directed to West Virginia. Most of the negotiations took place outside of this State, and the contracted services were entirely performed within the boundaries of South Carolina. Accordingly, the Court finds Defendant did not purposefully avail itself of the privileges of doing business in West Virginia by simply communicating by phone and email with this West Virginia company nor by attending a one hour meeting in Beaver, West Virginia, to discuss a contract, which the parties never intended to be performed here.

After considering all of Plaintiff's arguments relative to Defendant's alleged contacts with West Virginia (both individually and as a group) and having construed all allegations in favor of the Plaintiff, the Court finds no purposefully directed activities by the Defendant sufficient to meet the minimum contacts requirement to establish personal jurisdiction. The Court makes this finding having given due consideration to all facts, including that Defendant has no agent, office, or property in West Virginia. More importantly, other than a one hour meeting of little substance, the contract was entirely negotiated and performed outside of West Virginia. There is no evidence or argument to suggest that the Defendant engaged in significant or long-term business activities in West Virginia or that the parties ever agreed that West Virginia law would govern any dispute arising out of the contract. Further, it appears that the contract negotiations were initiated by an employee of the Plaintiff contacting the Defendant as opposed to the Defendant "reaching into West Virginia" to initiate a business contract. In sum, there is no evidence to suggest that Defendant "purposefully avail[ed] itself [of] the privilege of conducting activities in [West Virginia]." *ALS Scan, Inc.,* 293 F.3d at 712-713. The Court finds

that Plaintiff's claim should be dismissed without prejudice for lack of personal jurisdiction. Having made such finding, the Court declines the opportunity to address the issue of venue or transfer of the same.

## CONCLUSION

WHEREFORE, as discussed herein, the Court does hereby **ORDER** that *Defendant's Motion to Dismiss (*Document 5) be **GRANTED** and Plaintiff's Complaint be **DISMISSED** without prejudice.

The Court, having found a lack of personal jurisdiction, does hereby **ORDER** that Plaintiff's *Motion for Leave to Amend Complaint and Supporting Memorandum* (Document 11) be **TERMINATED** as **MOOT.**

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: March 8, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA